### 15882.   MORRIS *et al.* v. SCOTT.

Where the plaintiff in an execution transferred it to another, who placed it in the hands of the sheriff for levy, and the defendant, without suffering a levy and sale by the sheriff for the purpose of making the money, paid that officer the amount of the fi. fa. voluntarily and with knowledge that in doing so he was responding to the asserted claim of the transferee, he was not entitled thereafter to have the fund applied to the payment of an execution purchased by him, against the original plaintiff in the execution so paid. After such voluntary payment any right he might have had to offset the judgments on which the fi. fas. issued no longer existed. Where the defendant, on making such payment, deposited with the sheriff the fi. fa. held by him against the plaintiff, with a demand for the money, the court, upon a money-rule, properly awarded the fund to the transferee at whose instance it had been collected.

DECIDED APRIL 18, 1925.

Money rule; from DeKalb superior court—Judge Hutcheson. July 12, 1924.

*Parker & Patterson,* for plaintiffs in error.

*McElreath & Scott,* contra.

BELL, J.   John I. Miller procured a judgment against W. R. and T. J. Lightfoot as principals and L. M. Morris as surety. An execution was issued thereon and was transferred to Thomas H.

Scott, Miller's attorney, for no other consideration than professional services rendered in the case in which the judgment was obtained. Scott placed the execution in the hands of the sheriff for levy. Morris, with knowledge that the execution had been transferred to Scott, voluntarily paid the same, and simultaneously deposited with the sheriff two executions which he, Morris, had purchased and which had been transferred to him, against Miller, requesting that the fund should not be paid over to Scott until these fi. fas. had been satisfied. Scott obtained a rule against the sheriff for the money paid by Morris, and, the above facts appearing upon the hearing, the fund was awarded by the court to Scott; and Morris excepted. In the view which we take of the case it is immaterial to give the dates of the judgments, executions, and transfers, or the dates of the record of the executions and transfers.

It is insisted by Morris, the plaintiff in error, that as the transferee of the fi. fas. against Miller, considering with the other facts the dates of the several transactions and of the record, he was entitled to offset the judgments upon which the same were issued, against the judgment which Miller had obtained against him and the Lightfoots. It is contended that Scott as the transferee of the judgment last mentioned held the same subject to all equities or defenses which he, Morris, might have against Miller, including the right of offset, especially since Scott was Miller's attorney and acquired the transfer for no other consideration than legal services rendered in the particular case in which the judgment in favor of Miller was obtained. See *Langston* v. *Roby,* 68 *Ga.* 406; *Smith* v. *Evans,* 110 *Ga.* 536 (35 S. E. 633) ; *Hargett* v. *McCadden,* 107 *Ga.* 773 (33 S. E. 666) ; *Watters* v. *Wells,* 7 *Ga. App.* 778 (68 S. E. 450). These cases are relied upon by the plaintiff in error to sustain his right; and, as authority for the practice pursued, *Wellborn* v. *Bonner,* 9 *Ga.* 82, is cited.

After a careful examination of the authorities cited and a serious consideration of the points insisted upon, we have concluded that the position taken by the plaintiff in error is not sustainable, not because the legal propositions advanced may not be sound, but because in our opinion, assuming them sound, the case does not warrant their application. Morris voluntarily paid the judgment against him. How was he then in position to offset other judg-

ments against it? So far as he was concerned it was satisfied. He, being a surety, had the right, of course, to control it as against his principals, but he could not both pay and offset. The very purpose of an offset is to avoid an actual payment in cash. The case is controlled in principle, we think, by the decision of the Supreme Court in *Carhart* v. *Grier, 56 Ga.* 384, wherein it was ruled: "Where property offered for sale by the sheriff was withdrawn on the promise of the defendant that he would pay off the execution levied thereon, and this payment was in fact made, the money in the hands of the sheriff is not subject to an older execution against such defendant." In the opinion in that case it was said: "The money in the sheriff's hands was not raised by the *sale* of the defendant's property, but was a *voluntary* payment by the defendant of the Grier *fi. fa.,* which he had the right to do, and it was the duty of the sheriff to have entered that payment on that fi. fa. in satisfaction thereof, there being no other fi. fa. in his hands at that time. Grier became entitled to the money when it was voluntarily paid by the defendant in satisfaction of his fi. fa., and the fact that an older fi. fa. against the defendant was afterwards placed in the sheriff's hands did not deprive Grier of his right to the money which the defendant had voluntarily paid in satisfaction of his fi. fa. If the money in the hands of the sheriff had been raised by a *sale* of the defendant's property that would have presented a different question. There is nothing to prevent the plaintiffs in the older fi. fa. from levying it on the defendant's property and making their money, so far as the record shows."

It would seem that if the sheriff, having received money by a voluntary payment by a defendant in fi. fa., would be unauthorized to pay it over to older fi. fas. against the same defendant, he would not be warranted in paying it to fi. fas. against the plaintiff whose execution had thus been paid, in order that the defendant, *the party making the payment,* might be enabled to offset against the plaintiff's judgment those upon which were issued the fi. fas. controlled by the defendant. In the reasoning in *Wellborn* v. *Bonner,* supra, it was suggested that a defendant in a judgment, out of whom the sheriff had made the money to satisfy the judgment, might obtain an application of the money to a judgment which he himself had against the plaintiff in the judgment upon which the sheriff had made the collection. However, what was said in that case was in

reference to a mere possibility, and not to the existing, known facts, of a particular case; and in view of the decision in the *Carhart* case, it is fair to suppose that in the *Wellborn* case the court had in mind not a voluntary payment by a defendant desiring an offset, but the actual making of the money by the sheriff through a levy and sale.

Morris knew that the execution against him in favor of Miller had been transferred to Scott, and that Scott had placed the execution in the hands of the sheriff for the purpose of levy. He knew that he was responding to the asserted claim of Scott when he made the payment. Under the circumstances the payment was voluntary, and not recoverable. The simultaneous deposit of the fi. fas. which he held against Miller did not amount to more than a protest, and "filing a protest at the time of payment does not change the rule." Civil Code (1910), § 4317. *Strange* v. *Franklin,* 126 *Ga.* 715 (55 S. E. 943). If the money in the hands of the sheriff had been raised by a sale of Morris's property, he would probably have been in a position to proceed in the manner suggested in *Wellborn* v. *Bonner,* supra. See also *Columbus Factory* v. *Herndon,* 54 *Ga.* 209, 211. But as it is, he is in no better position than if he had paid the money directly to Scott.

There is perhaps another reason why the court was right in refusing the offset. The code seems to make no provision for the offset of fi. fas., but where the defendant in one of them is insolvent, an offset will be allowed in equity at the instance of the other (*Lucas* v. *Wilson,* 67 *Ga.* 356 (2)); and money rules, of course, are adjudicated upon equitable principles. Morris, without showing the transfer of any judgment, relies solely upon the assignment of fi. fas. It was said in *Bryant* v. *Hambrick,* 9 *Ga.* 133 (2): "The judgment, and not the execution issuing thereon, is the proper subject-matter of set-off." We are uncertain, however, as to the applicability of the ruling in the *Bryant* case to the present situation, and we place our affirmance upon the other grounds stated.

Whatever remedy the plaintiff in error might have had or may yet have against Miller, we think that when he made a voluntary payment of the fi. fa. under which Scott was claiming he placed the fund beyond his reach, and that there was nothing to adjudicate in his favor upon a money rule.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*